RECEIVED
SEP 1 1 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TOYOTA MOTOR CREDIT CORP. | CIVIL ACTION NO. 06-2175 |
| VERSUS | JUDGE DOHERTY |
| JAMES E. JOHNSON, ET AL. | MAGISTRATE JUDGE HILL |

### MEMORANDUM OPINION AND ORDER

Appellant Toyota Motor Credit Corporation ("Toyota"), brings this appeal, pursuant to 28 U.S.C. §158(a), from a final Order Confirming Chapter 13 Plan of the United States Bankruptcy Court for the Western District of Louisiana entered October 24, 2006 in the matter entitled *In re: James E. Johnson, Jr. and Dora G. Johnson,* Case No. 05-53918. [BR Doc. 59]. The sole issue on appeal is whether a vehicle owned by the Debtors, and financed by Toyota, was acquired for their personal use, rather than for a business use. If the vehicle was purchased for personal use, then Toyota's claim, secured by the vehicle, cannot be "crammed down"[1] to the retail value of the vehicle, but must be paid in full.

### Factual and Procedural Background

On November 30, 2005, Debtors-Appellees (collectively "Debtors") James E. Johnson, Jr. and Dora G. Johnson filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the

---

[1] "Cramdown" is a bankruptcy term of art defined succinctly by the court below:

> The Plan treatment of the [Toyota] claim is what is known as the "cramdown," that is, although [Toyota]'s claim will be recognized as secured, the amount of the secured portion of such claim will be equal to the value of the collateral securing the claim with the balance of the claim being deemed unsecured. *See,* sections 506(a) and 1325(a)(5)(B). [Toyota] takes the position, however, that a provision of what has been referred to as the "hanging paragraph," which immediately follows section 1325(a)(9), does not permit such modification.

*In re Johnson,* 350 B.R. 712, 714 (Bkrtcy.W.D.La. 2006).

United States Bankruptcy Court for the Western District of Louisiana. [BR Doc. 1]. Toyota holds a claim in the debtors' bankruptcy case in the amount of $11,563.23, secured by a 2002 Chevrolet Impala automobile (the "vehicle"). The vehicle was acquired by the Debtors on December 11, 2003, within 910 days of the bankruptcy petition date.

During the course of their bankruptcy case, the Debtors filed several Chapter 13 Plans, each proposing to "cramdown" Toyota's secured claim of $11,563.23 to $7,910.00, and to treat the balance of $3,653.23 as unsecured pursuant to 11 U.S.C. §506(a)(1).[2] The Debtors filed their Original Plan on December 9, 2005, [BR Doc. 5], which the Bankruptcy Court denied on March 15, 2006. [BR Doc. 25]. On March 27, 2005, the Debtors filed an Amended Chapter 13 Plan ("First Amended Plan") with the same cramdown provision proposed as to Toyota's claim. [BR Doc. 27]. Toyota objected to the Plan on March 29, 2006 on grounds it was clear the vehicle in question was purchased for Ms. Johnson's personal use, and, therefore, the Debtors are prohibited from "cramming down" Toyota's secured claim. [BR Doc. 29].

On May 16, 2006, Toyota and the Debtors filed a stipulation of facts and issues. With regard to the facts, the parties stipulated to, *inter alia*, the following:

- Dora Johnson is employed by the Lafayette Parish School Board as a clerk at J. W. Faulk School in Lafayette, Louisiana, which is 32 miles from her home;

---

[2] 11 U.S.C. §506(a)(1) permits bifurcation of a creditor's claim, as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

- Ms. Johnson drives a 2002 Chevrolet Impala;
- The vehicle was purchased for the primary purpose of Ms. Johnson driving to and from work at her employment as a salaried employee;
- 70.94% of the mileage on the vehicle is attributable to Ms. Johnson driving to and from work;
- Ms. Johnson also uses the vehicle to go to the grocery store and to run other personal errands;
- The finance manager at Hampton Toyota completed the Retail Installment Contract which the Debtors thereafter signed and checked the box marked "personal" in response to the statement on the form contract inquiring as to the vehicle's "primary use;" and
- Dora Johnson does not use the vehicle in her work at her place of employment.

[BR Doc. 32].

With regard to the issues, the parties stipulated the secured claim of Toyota satisfies two of the three requirements of 11 U.S.C. §1325(a)(9), commonly referred to as the "hanging paragraph," which prevents cramdown.[3] [BR Doc. 32]. The parties did not stipulate to the third requirement, that is, the issue of whether the vehicle was acquired for the personal use of a debtor.

On July 20, 2006, the Bankruptcy Court overruled Toyota's objections to confirmation of the First Amended Plan, finding Ms. Johnson did not acquire the vehicle for her personal use. [BR Doc. 39].

On July 31, 2006, Toyota filed a motion for new trial or rehearing, [BR Doc. 42], which the Bankruptcy Court denied on August 18, 2006. [BR Doc. 47]. The Debtors did not proceed to confirmation of the First Amended Plan, but rather, filed a Second Amended Plan, [BR Doc. 51],

---

[3] The "hanging paragraph" of 11 U.S.C. 1325(a)(9) states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

3

and, subsequently, a Third Amended Plan. [BR Doc. 56]. Each successive proposed plan has contained the same "cramdown" provision as to Toyota's claim. Toyota objected to both the Second and Third Amended Plans on the same grounds that it had objected to the Original and First Amended Plans, i.e., the vehicle at issue was acquired for Ms. Johnson's personal use. (BR. Docs. 53, 54, and 57, respectively).

Despite Toyota's objections, on October 23, 2006, the Bankruptcy Court entered an order confirming the Debtors' Third Amended Plan. [BR Doc. 59]. Toyota timely filed a Notice of Appeal from the final Order Confirming Chapter 13 Plan to this court on October 30, 2006. (BR. Doc. 61).

## Standard of Review

"A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review and will be reversed only if, considering all evidence, [this Court] is left with the definite and firm conviction that a mistake has been made." *Matter of Young*, 995 F.2d 547, 548 (5th Cir. 1993). The Bankruptcy Court's conclusions of law are reviewed de novo. *Id*. When a finding of fact is premised on an improper legal standard, that finding loses the insulation of the clearly erroneous standard and is subject to full de novo review. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) ("the clear error standard does *not* apply to findings of fact resulting from application of an incorrect legal standard."), citing *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir.1991).

## Law and Analysis

The crux of this appeal is whether the vehicle in question was acquired for the personal, or business, use of the Debtors. Toyota argues the vehicle was acquired for Ms. Johnson's personal use, while the Debtors argue that the Bankruptcy Court properly concluded that it was not, i.e., the

vehicle was acquired for Ms. Johnson's business use. The issue is critical, because if the vehicle is characterized as having been acquired for personal use, Toyota's claim is exempt from the "cramdown" provision, and Toyota is entitled to the full amount of its secured claim.

The provision of the Bankruptcy Code known as the "hanging paragraph" is contained in 11 U.S.C. §1325(a)(9), which was amended by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The "hanging paragraph" states:

> For purposes of paragraph (5) [11 U.S.C. §1325(a)(5),[4] which addresses treatment of secured claims], section 506 [11 U.S.C. §506, which provides for bifurcation of under-secured claims] shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C.. §1325(a)(9).

---

[4] 11 U.S.C. 1325(a)(5) provides:

> (5) with respect to each allowed secured claim provided for by the plan--
>     (A) the holder of such claim has accepted the plan;
>     (B)(i) the plan provides that--
>         (I) the holder of such claim retain the lien securing such claim until the earlier of--
>             (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>             (bb) discharge under section 1328; and
>         (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>     (iii) if--
>         (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>         (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>     (C) the debtor surrenders the property securing such claim to such holder;

Here, the Debtors and Toyota have stipulated that Toyota's claim satisfies two of the requirements of the "hanging paragraph," that is, (1) Toyota has a purchase money security interest securing the debt that is the subject of the claim, and (2) the debt was incurred within the 910-day period preceding the date of the filing of the bankruptcy petition. The disputed issue is whether the vehicle in question was acquired for Ms. Johnson's personal use.

The Bankruptcy Court found the vehicle in question was not acquired for Ms. Johnson's personal use. Prior to ruling, the court noted that this was its first opportunity to address issues raised by the "hanging paragraph" and acknowledged "many interested persons in addition to the immediate parties before the court are awaiting this court's decision in anticipating of the court establishing a 'bright line' test for the determination of business versus personal use." *In re Johnson*, 350 B.R. 712, 715 (Bankr. W.D.La. 2006). The court, however, declined to enunciate such a "bright line" test, stating that it was adopting a "totality of the circumstances" approach in determining whether the vehicle in question was acquired for personal, as opposed to business, use. *In re Johnson*, 350 B.R. at 715, citing *Public Finance Corp. v. Freeman,* 712 F.2d 219 221 (5th Cir.1983)("the phrase 'proposed in good faith' [in section 1325] must be viewed in light of the totality of the circumstances surrounding confection of a given Chapter 13 plan."); *Matter of Gamble,* 143 F.3d 223, 226 (5th Cir.1998)(in applying section 523(a)(15)(B), "an assessment of benefit and detriment ... implicates an analysis of the totality of the circumstances, not just a comparison of the parties' relative net worths."). The court reasoned:

> [A] substantial factor in considering the totality of the circumstances is whether the acquisition of the vehicle *enabled the debtor to make a significant contribution to the gross income of the family unit.* If it did, then this court concludes that the vehicle was not "acquired for the personal use of the debtor."

*In re Johnson*, 350 B.R. at 716.

Finding that the vehicle was purchased for the primary purpose of enabling Dora Johnson to drive to and from work, and, at the time the vehicle was acquired, Ms. Johnson's employment made a significant contribution to the family's gross income, the court held the vehicle was not acquired for personal use within the meaning of the "hanging paragraph." Thus, the court held the "anti-cramdown" provision contained in 11 U.S.C. §1325(a)(9) does not apply, and Toyota's debt should be modified in accordance with 11. U.S.C. §1325(a)(5)(B). *In re Johnson*, 350 B.R. at 716.

Toyota argues the Bankruptcy Court's application of the "totality of the circumstances" test was improper, and the lower court should have looked to other provisions of the Bankruptcy Code and other federal laws to define the term "personal use." Toyota relies heavily on the Fifth Circuit's definition of "personal debt" in *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988), in which the court held that "the test for determining whether a debt should be classified as a business debt, *rather than a debt acquired for personal, family or household purposes*, is *whether it was incurred with an eye toward profit*." (emphasis added). *Accord In re Kestell*, 99 F.3d 146 (4th Cir. 1996); *In re Kelly*, 841 F.2d 908 (9th Cir. 1988); *In re Burns*, 894 F.2d 361 (10th Cir. 1990). On the other hand, the Debtors urge the court to adopt the "totality of the circumstances" approach employed by the bankruptcy court in interpreting the term. This Court concludes that neither approach frames the issue properly.

The term "personal use" is found within the "hanging paragraph" of the newly revised Bankruptcy Code. The term is not a defined term. Jurisprudential interpretations of the new revisions and in particular of the term "personal use" therein are scant. The legislative history of the statute is not particularly helpful, inasmuch as it does not define the term or give guidance as to how it should be interpreted. Thus, the court directs its attention to the customary usage and

meaning of the term "personal use," as guided by the Fifth Circuit's pronouncement in *Aviall Services, Inc. v. Cooper Industries, Inc.*, 263 F.3d 134, 148 (5th Cir. 2001) that the court "must abide by the well-established maxim of interpretation that legal terms not defined in a statute are ordinarily presumed to convey their customary legal meaning," and *United States v. Young*, 282 F.3d 349, 351 (5th Cir. 2002) ("[w]hen Congress uses a word that has acquired a settled meaning at common law, courts must infer, unless the statute dictates otherwise, that Congress means to incorporate the established meaning of that term.")

Within this construct, the court notes our society – for reasons not relevant to this opinion – has determined that the "bright line" designating personal time as opposed to business time is drawn at the door of the office; that is, before one arrives at work, one's time and one's assets are one's own, but once one steps into the office and "on the clock," one's time is not one's own. Thus, courts have recognized in other contexts that travel to and from a place of employment is a "personal," as opposed to a "business," activity. *See, e.g., Marcel v. Pool Co.*, 5 F.3d 81, 85 (5th Cir. 1993) (citing Louisiana state court cases, court held that employees are not acting within the course and scope of their employment while traveling to and from work unless their employer is paying for travel expenses). Furthermore, our society has historically recognized a distinction between individuals who use their vehicles in the performance of their job duties, i.e., painters, carpenters, and traveling salesmen, and those who do not.[5] Thus, this Court concludes the relevant inquiry for

---

[5] Historically, Louisiana debtors attempting to exempt motor vehicles from seizure under the general bankruptcy rules have relied upon La.Rev.Stat. §13:3881, otherwise known as the "tools of the trade" exemption. Under this statute, the test for determining what qualifies as an exempt "tool" is whether the tool or instrument "is necessary for the exercise of the profession, that is, whether or not the debtor will be prevented from exercising his trade or profession if he is deprived of the tool or instrument." *See In re Belsome*, 434 F.3d 774 (5th Cir. 2005).

However, several amendments to La.Rev.Stat. §13:3881 have rendered the "tools of the trade" exemption as it relates to motor vehicles nonexistent. The Fifth Circuit -- noting the inconsistent results reached by Louisiana

Case 6:06-cv-02175-RFD-CMH   Document 13   Filed 09/11/07   Page 9 of 13 PageID #: 117

purposes of defining the term "personal use" as opposed to "business use" within the context of the "cramdown" provision and the "hanging paragraph" is twofold, that is: (1) whether the individual is using the vehicle to travel to and from work, or (2) whether the vehicle is actually utilized in the performance of the individual's job duties. In other words, is the vehicle used *to get to* one's work or *to do* one's work once there.

Applying this two-fold inquiry to the case at bar, the court finds Ms. Johnson was using the vehicle to travel to and from work, and Ms. Johnson did not utilize the vehicle in the performance of her job duties once at work. Indeed, Ms. Johnson stipulated she acquired the vehicle for both personal use and for transportation to and from work; she did not use the vehicle for business after she arrived at her employment; and she signed a retail installment contract with the finance manager at Hampton Toyota which indicates the primary use for the vehicle was "personal." Considering the foregoing, the court concludes that Ms. Johnson acquired the vehicle for her "personal" use.

The fact that Ms. Johnson has used her vehicle *primarily* for transportation *to and from* work, as evidenced by the fact that 70.94% of the mileage on the vehicle is attributable to Ms. Johnson driving to and from work, does not persuade the court that the vehicle was acquired for non-personal use. Ms. Johnson *does not actually use the vehicle in the performance of her job duties as a clerk*

---

federal district courts on the issue – has determined that motor vehicles can no longer be exempted under the "tools of the trade" exemption, but rather must be exempted under the specific motor vehicle exemption. *In re Belsome*, 434 F.3d at 779. In the most recent amendment to the statute in 2006, the exemption was further clarified to exempt "one motor vehicle per household used by the debtor and his family household for any purpose." LSA-R.S. 13:3881.

Despite the fact that motor vehicles are no longer exempt from seizure under the "tools of the trade" provision of the exemption statute, this court finds compelling and instructive the historical significance of differentiating between vehicles actually used in the performance of job duties and those used merely to travel to and from work. Such historically divergent treatment of motor vehicles under the state exemption laws is a strong argument in support of Toyota's argument that the vehicle in question was acquired for *personal* use, inasmuch as Ms. Johnson does not use the vehicle in the performance of her job duties.

*at the school.*[6] Here, Ms. Johnson stipulated her place of employment is 32 miles from her home, which would account for the large percentage of mileage being attributed *to her commute*. However, for whatever reason, it is customarily accepted within the relevant business culture that one's commute is conducted with one's personal time and personal means. Ms. Johnson was not paid for the time involved in her commute, received no stipend from her employer for the use of her vehicle and thus and most relevant, did not *use* her vehicle within the performance of her work. Ms. Johnson *chooses* to drive such distance to her work for reasons that are not relevant here. The fact that Ms. Johnson travels such distance to reach her work, does not change the court's conclusion that her travel to and from work is an inherently personal activity within the context of that relevant business community.

This court's conclusion is consistent with the reasoning of other provisions of the Bankruptcy Code and other statutory provisions addressing for their purposes, the distinction between business and personal use. For example, the Bankruptcy Code defines "consumer debt," as opposed to "business debt," as "debt incurred by an individual primarily for *personal*, family, or household purpose." 11 U.S.C. §101(8) (emphasis added). The Bankruptcy Code also allows individual – as opposed to business – debtors to redeem tangible personal property "intended primarily *for personal, family or household use*" from a lien securing a debt, pursuant to 11 U.S.C. §722. This provision, which allows the individual debtor to retain his personal property by paying the creditor the replacement value of the personal property rather than paying the claim in full, contains language that is almost identical to the language used in 11 U.S.C. §1325(a)(9).

---

[6] Were Ms. Johnson to actually use the vehicle in her work – as, say, an itinerant teacher might use her vehicle going from place to place to teach – perhaps the court might view the facts of this case in a different light. However, those are not the facts before the Court.

The Internal Revenue Code similarly differentiates between personal and business expenses, providing "no [business] deductions shall be allowed for personal, living, or family expenses." 26 U.S.C. §262(a). Furthermore, a taxpayer's cost of commuting to his place of employment does not qualify as a deductible business expense. *Fausner v. C.I.R.*, 413 U.S. 838, 838, 93 S.Ct. 2820, 2821 (1973); 26 C.F.R. 1.262-1(b)(5).

Of note, also, is the recent decision from the Eastern District of Louisiana, *In re White*, 352 B.R. 633 (Bankr.E.D. La. 2006), in which that court considered the issue of whether a vehicle was acquired for personal use in the context of Section 1325's "hanging paragraph." In *White*, the court noted "common sense" should guide when interpreting terms that have not been explicitly defined by the Bankruptcy Code, noting *The* AMERICAN HERITAGE DICTIONARY 925 (2nd ed. 1991) defines "personal" as "'[o]f or pertaining to a particular person . . .' In other words, not related to business . . .." *White*, 352 B.R. at 641. *See also United States v. Young, supra; Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001). Noting the debtor stipulated she drove *90 miles round-trip to and from work*, the *White* court held:

> This vehicle is nothing other than one used for Debtor's personal benefit. Based on Debtor's stipulations, Debtor acquired her vehicle for both personal use and for transportation to and from work. Given that she did not use the vehicle for business after she arrived at her employment, received no reimbursements from her employer for its use, and deducted no expenses from her income for tax purposes, the Court cannot conclude that the vehicle is a business asset. At the time of purchase, Debtor even indicated on the retail installment contract that the vehicle was being acquired for personal use. Based on Debtor's overall use of the vehicle and the entire percentage of miles driven, its primary use was for the benefit of Debtor personally. Therefore, the Court concludes that the vehicle was purchased for personal use within the meaning of the Bankruptcy Code.

*Id.* Thus, the court agreed, a debtor's use of a vehicle for *both* transportation to and from employment and personal benefit constitutes "personal use," because it does not constitute use for

11

a business purpose. *See also In re Lowder*, 2006 WL 1794737, *4 (Bkrtcy.D.Kan. 2006) ("when a vehicle is not used within the scope of employment and the vehicle is acquired for the joint purpose of traveling to and from work and for conducting a debtor's private affairs, it is properly classified as "personal use" for purposes of the Bankruptcy Code.").

This Court also points out the Bankruptcy Court's statement below that "[m]ost, if not all, situations will be similar to the instant case where the use of the vehicle is a blend of business and personal use." *In re Johnson*, 350 B.R. at 716. Given this certainty, and inasmuch as *most* individuals purchase vehicles which will be used for commuting to work *and* running personal errands, it is clear if the court were to interpret the term "personal use" in the manner urged by the Debtors, no vehicle would ever be deemed a personal use vehicle within the context of the "hanging paragraph."

Considering the foregoing, the Court concludes that the Bankruptcy Court's application of its "totality of the circumstances" test was improper. Inasmuch as the Bankruptcy Court's factual finding that Ms. Johnson's vehicle was acquired for her personal use was premised on an improper legal standard, the Court's finding is subject to de novo review on appeal.[7] After consideration of all the briefs and the record, this Court concludes that the more appropriate standard for interpreting the term "personal use" in the "hanging paragraph" should flow from its settled meaning from common law, *U.S. v. Young, supra*, and therefore is twofold, that is, (1) whether the individual is using the vehicle to travel to and from work, or (2) whether the vehicle is actually utilized in the performance of the individual's job duties. Applying this standard to the case at bar, the Court

---

[7] When a finding of fact is premised on an improper legal standard, that finding loses the insulation of the clearly erroneous standard and is subject to full de novo review. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001).

concludes that Ms. Johnson acquired the vehicle in question for her personal use.

## Conclusion

For the reasons stated herein, the Court REVERSES the decision of the Bankruptcy Court and holds the vehicle purchased by Ms. Johnson was acquired for her personal use. As such, Toyota's secured claim cannot be "crammed down" to the retail value of the vehicle, but must be paid in full. Accordingly the Court REMANDS this case to the Bankruptcy Court for further proceedings consistent with this ruling. Pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure, the Clerk of Court is DIRECTED to prepare, sign and enter judgment upon receipt of and in accordance with this Memorandum Opinion and Order.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _11_ day of _Sept_, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE